## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA ANN RUOSS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-232** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **WENDY NICHOLAS**, *et al.*, | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

Presently before the court is a motion to dismiss and/or for summary judgment filed by Defendants Houston and Sena and a motion to dismiss filed by Defendants Buck, Frantz, McKee, Nicholas, Rohland, and Rowe.  For the reasons that follow, both motions will be granted, the complaint will be dismissed without prejudice, and Plaintiff will be granted leave to file an amended complaint.

### I.    Background and Procedural History

*Pro se* Plaintiff Lisa Ann Ruoss ("Ruoss"), an inmate in the State Correctional Institution-Muncy ("SCI-Muncy") who was incarcerated in that facility at all relevant times, initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on February 8, 2021.  (Doc. No. 1.)  In the complaint, Ruoss alleges that Defendant Sena, a doctor in the SCI-Muncy medical department, discontinued her prescribed medications in May 2020 because he believed they were not working appropriately.  (*Id.* at 7.)  Ruoss alleges that Sena made the decision to discontinue her medications because Ruoss "smacked" her

girlfriend on March 6, 2020 due to her belief that the girlfriend had been having an affair with another woman. (*Id.*) Sena allegedly decided to discontinue Ruoss's medications because Ruoss's behavior in assaulting her girlfriend was impulsive, and the prescribed medications were supposed to stop her from engaging in impulsive behaviors. (*Id.*) Ruoss alleges that Sena never asked her whether the assault was an impulsive action. (*Id.*) Ruoss further alleges that the assault was "a decision" that she made and not an impulsive act. (*Id.*)

According to Ruoss, she was prescribed a medication to treat Attention-Deficit/Hyperactivity Disorder ("ADHD") and several other medications. (*Id.*) Ruoss states that impulsivity is one of many symptoms of ADHD, but notes that Sena discontinued all of Ruoss's prescriptions and not just the prescription for her ADHD. (*Id.*) Ruoss posits that if she was being impulsive, Sena could have discontinued the ADHD medication without discontinuing the other prescriptions. (*Id.*) Ruoss also alleges that before he discontinued the prescriptions, Sena "never asked" how Ruoss felt. (*Id.*)

As a result of Sena's actions, Ruoss's prescriptions for Klonopin and Sinequan were discontinued, both of which Ruoss alleges helped to keep her calm. (*Id.*) Ruoss allegedly spent the next four months writing to the manager of her housing unit and speaking with the unit psychologist to inquire whether they could have her medications re-prescribed. (*Id.* at 7.) During this period, Ruoss alleges

2

that she was "real hyper and deprived of sleep," and that she "had to buy and live off of Melatonin" from the prison commissary so that she could sleep. (*Id.* at 12.) She alleges that she was "literally suffering" without her medication. (*Id.*) She alleges that she has been on prescribed medications since she was sixteen years old. (*Id.* at 7.)

Ruoss alleges that on August 11, 2020, she was "having girlfriend problems again," and as a result she "beat this girl up" who was allegedly having an affair with her girlfriend. (*Id.* at 8.) Ruoss alleges that because her medications had been discontinued, she made the poor decision to start the fight and to continue to "stomp on" the other woman's head. (*Id.*) Ruoss acknowledges that she likely would have assaulted the other woman even if she had been on her prescribed medications, but alleges that the assault was significantly worse because of her medications being discontinued. (*Id.*) As a result of the assault, Ruoss was placed in the prison's Behavioral Management Unit. (*Id.*) Since being placed in the Behavior Management Unit, Ruoss alleges that she has been prescribed medication again. (*Id.* at 13.)

Ruoss states that the basis of her claims is that doctors in SCI-Muncy discontinued her prescriptions despite their knowledge that she "needed" the prescribed medications and that she had "mental health diagnoses." (*Id.* at 8.) Ruoss notes that the doctors allegedly discontinued the prescriptions because of her

impulsive behavior but that she is "on medicines now" and is "fine" and has "had

no incidents at all." (*Id.*)  She notes that she was "behavioral" in her younger

years, but that this has "nothing to do with the present time or today." (*Id.*)  Ruoss

reiterates that "nobody asked" her how she felt before Sena discontinued her

prescriptions and states, "nobody can tell me how I am feeling or how to feel." (*Id.*

at 9.)  She also alleges that she requested to see another doctor in the prison, but

that the request was denied. (*Id.*)  She raises a claim for violation of the Eighth

Amendment, alleging that Sena's decision to cut her off "cold turkey claiming that

the meds were not working" violated the Eighth Amendment when Ruoss "felt like

[the meds] were" working. (*Id.* at 10.)  She alleges that Sena knew that Ruoss has

"mental health disorders" and that she needs medication. (*Id.*)  In addition to Sena,

the complaint also names as Defendants the prison's superintendent Wendy

Nicholas, the prison's deputy superintendents William Frantz and Nicole McKee, a

major in the prison named Michael Rowe, a psychologist in the prison named Ms.

Buck, and a manager in the prison named Mr. Houston (Ruoss does not provide

first names for Buck or Houston). (*Id.* at 1-2.)

Defendants Houston and Sena ("Medical Defendants") filed a motion to

dismiss and/or for summary judgment on June 14, 2021 along with a supporting

brief. (Doc. Nos. 31-32.)  The Medical Defendants argue that the complaint

should be dismissed based on Ruoss's failure to exhaust administrative remedies

4

and failure to state a claim upon which relief may be granted, or, alternatively, that they should be granted summary judgment based on Ruoss's failure to exhaust. (Doc. No. 32.)  Ruoss did not file a formal brief in opposition to the motion, but she did file two letters containing arguments as to why the motion should be denied.  (*See* Doc. Nos. 33, 35.)  The court liberally construes these letters as Ruoss's opposition to the motion.

Because the Medical Defendants' motion raised the issue of exhaustion and therefore implicated matters outside of the pleadings, the court issued an order on July 14, 2021 converting the motion to a motion for summary judgment with respect to the issue of exhaustion.  (Doc. No. 36.)  The court required Defendants Buck, Frantz, McKee, Nicholas, Rohland, and Rowe ("DOC Defendants") to indicate whether they would also be raising the issue of failure to exhaust administrative remedies, and granted the parties an opportunity to provide supplemental briefing or evidence with regard to the issue of exhaustion.  (*Id.*) The DOC Defendants subsequently stated via a letter from counsel that they did not intend to raise the issue of exhaustion of administrative remedies at this time. (Doc. No. 37.)

The DOC Defendants moved to dismiss the complaint on July 7, 2021. (Doc. No. 34.)  They filed a brief in support of their motion to dismiss on July 20, 2021.  (Doc. No. 38.)  They argue that the case should be dismissed for failure to

state a claim upon which relief may be granted based on Ruoss's failure to allege their personal involvement in the alleged violations of Ruoss's civil rights. (Doc. No. 38.) Ruoss again failed to file a formal brief in opposition to the motion, but she did file two letters that address the motion. (*See* Doc. Nos. 39-40.) In the letters, Ruoss appears to misconstrue the DOC Defendants' motion to dismiss as a dismissal order from the court. (*See* Doc. No. 39 at 1 ("I would just like to let you know that I think dismissing my case was crap!"); Doc. No. 40 at 1 ("I have a few questions since my case was dismissed. Do I still have a case against Mr. Sena [and] Mr. Houston since they have a separate attorney?"). The court clarifies that Ruoss's complaint has not been dismissed before the present date. Nevertheless, given Ruoss's apparent disagreement with the potential dismissal of the complaint, the court will liberally construe these letters as her opposition to the DOC Defendants' motion to dismiss.

## II.    Legal Standards

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550

6

U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears

8

beyond a doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.     Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for

violations of federal constitutional rights committed by state officials. *See* 42

U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights," but is merely a means

through which "to vindicate violations of federal law committed by state actors."

*See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action

under Section 1983, a plaintiff must allege that: (1) the conduct complained of was

committed by persons acting under color of state law; and (2) the conduct violated

a right, privilege, or immunity secured by the Constitution or laws of the United

States.  *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005)

(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.     Discussion

The court will first address Defendants' arguments that the complaint should be dismissed for failure to state a claim upon which relief may be granted.  The Medical Defendants argue that the complaint fails to state a claim upon which relief may be granted because Ruoss fails to plead that she had a serious medical need or that Defendants were deliberately indifferent to that need.  (Doc. No. 32.)

The court agrees with the Medical Defendants.  To state a claim upon which relief may be granted for deliberate indifference to a serious medical need, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering,' and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person." *Dooley v. Wetzel*, 957 F.3d 366, 374 (2020) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)).  Here, Ruoss's allegations that she "needed" the prescribed medications and that she had "mental health diagnoses," and "mental health disorders," *see* Doc. No. 1 at 8, 10, are simply too vague and conclusory to allege a serious medical need.

Ruoss also fails to allege that Defendants acted with deliberate indifference. Ruoss's complaints that Defendant Sena did not ask her how she felt before discontinuing her prescriptions and her allegation that Sena discontinued her prescriptions despite the fact that she "felt like" the prescribed medications were working, *see* Doc. No. 1 at 10, appear to be nothing more than disagreements with Sena as to the proper course of treatment, which is not sufficient to state a claim for deliberate indifference to a serious medical need. *See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (noting that "mere disagreement as to the proper medical treatment" does not support a claim for violation of the Eighth Amendment).  Dismissal of the complaint is therefore appropriate given Ruoss's failure to allege a serious medical need or deliberate indifference to that need.

Dismissal is likewise appropriate with respect to the DOC Defendants because Ruoss fails to allege that they were personally involved in the alleged violations of her civil rights.  A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate, there must be evidence of

personal direction or actual knowledge and acquiescence.  *Id.*  Here, Sena is the only Defendant who is alleged to have discontinued Ruoss's prescriptions; none of the other Defendants are alleged to have been personally involved in that action.

Accordingly, given Ruoss's failure to allege a serious medical need, failure to allege deliberate indifference, and failure to allege the personal involvement of any Defendants other than Sena, the court will dismiss her complaint for failure to state a claim upon which relief may be granted with respect to all defendants.[1]

The court will, however, grant Ruoss leave to file an amended complaint. Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  Based on the foregoing, the court cannot conclude that amendment would be inequitable or futile in this case.

---

[1] Having reached this conclusion, the court will not address the Medical Defendants' argument that Ruoss failed to exhaust administrative remedies.  *See, e.g.*, *Oliver v. Wetzel*, 861 F. App'x 509, 515-16 (3d Cir. 2021) (noting that court has the discretion to address merits of claim before addressing whether plaintiff exhausted administrative remedies).

**IV.    Conclusion**

For the foregoing reasons, Defendants' motions to dismiss (Doc. Nos. 31,

34) will be granted and Ruoss will be granted leave to file an amended complaint.

An appropriate order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: November 24, 2021